**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

EDWARD PACHEO MUÑEZ,

    Plaintiff,

        v.

JESUS GONZÁLEZ-CRUZ et al.,

    Defendants.

CIVIL NO.: 12-2058 (JAG)

**REPORT AND RECOMMENDATION**

## I.   PROCEDURAL HISTORY

On December 28, 2012, Edward Pacheco Muñiz filed a complaint against Jesús González-Cruz ("González") in his personal and official capacity, Carlos Molina Rodríguez ("Molina") in his personal and official capacity, Ada M. Rivera ("Rivera") and several generic defendants, under 42 U.S.C. §§ 1983; 1988, the First and Fourteenth Amendments to the United States Constitution, Law 100-1959 29 LPRA § 146 ("Law 100"), and Article 1802 of the Puerto Rico Civil Code ("Article 1802"). ECF No. 1. Summons were issued as to González, Molina, and Rivera, but as of the date of this Report and Recommendation only Molina and González (collectively "defendants") have appeared in the case. See ECF Nos. 4; 5; 7. Pending before the court is Molina and González's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and plaintiff's response in opposition. ECF Nos. 13; 16.

## II.   BACKGROUND

The court draws the following factual allegations from plaintiff's complaint (ECF No. 1):

Plaintiff was employed by the Department of Corrections and Rehabilitation of Puerto Rico (the "D.O.C.") on April 16, 2004, as a "técnico sociopenal I," which was a career position[1]. ¶ 5.  The D.O.C. fired him from the position on November 28, 2011, and notified him of the dismissal on December 28, 2011, allegedly because of his affiliation with the Popular Democratic Party ("PDP").  ¶ 23.  All defendants knew of his political affiliation.  ¶ 23.  Plaintiff had never been reprimanded, sanctioned, or disciplined for any matter related to his job performance, but rather was lauded for his work.  ¶ 23.

On November 7, 2008, general elections were held in Puerto Rico.  ¶ 18.  Prior to the elections, the majority of the secretary and director positions for the agencies of the Government of Puerto Rico were composed of individuals associated with the PDP.  Id.  The New Progressive Party ("NPP") candidate, Luis Fortuño, defeated the PDP candidate in the gubernatorial race and took office as the Governor of Puerto Rico on January 2, 2009.  ¶¶ 19-20.  In January 2009, Governor Fortuño changed the composition of the Secretary, Director, and Administrator positions for the various agencies of the Puerto Rico Government.  ¶ 20.  At the date the complaint was filed, the majority of those positions were held by active NPP members, who in turn appointed other NPP members to trust positions, which resulted in promotions given to members of the NPP.  Id.

Molina is a very active member of the NPP.  ¶ 9.  Governor Fortuño named Molina as the Secretary of the D.O.C.  ¶ 21.  Molina resigned from the position of August 11, 2011.  Id.  At all

---

[1] The complaint states plaintiff was employed by the D.O.C. "on April 16, 2004, as an [*sic*] 'tecnico sociopenal I', said position was a career position, from his initial employment in 2004 as of April 15, 2005 when he was given the permanency of a career employee."  ECF No. 1, ¶ 5.  This statement is somewhat ambiguous as to whether plaintiff had the status of a career employee from the date commenced his employment in 2004, or whether he attained it the following year.  In their summary of the factual allegations in the complaint, defendants state: "On April 15, 2005, [plaintiff] was granted permanency as a career employee."  ECF No. 13, at 2.  The analysis in this report is unaffected by whether plaintiff had the status of a career employee beginning April 16, 2004 or April 15, 2005.

relevant times, Molina was acting pursuant to his authority as the Secretary of the D.O.C.  ¶ 9.
González is a very active member of the New Progressive Party ("NPP").  ¶ 6.  Governor
Fortuño named González as the Secretary of the D.O.C. as of August 15, 2011, substituting
Molina at first on an interim basis until the confirmation of González's nomination on September
15, 2011.  ¶ 22.  At all relevant times, González was acting pursuant to his authority as the
Secretary of the D.O.C.  ¶ 9.

Prior to his dismissal, his work at the D.O.C. lasted for over 7 years, including a period of
voluntary leave without pay.  ¶ 23.  Plaintiff requested a period of leave without pay between
August 31, 2007 and July 30, 2008, and Secretary of the D.O.C. Miguel A. Pereira Castillo ("Mr.
Pereira") granted said request.  ¶ 25.  On July 2, 2008, plaintiff requested an extension of his
leave without pay until July 20, 2009, and Mr. Pereira granted the extension request.  ¶ 26.  On
December 9, 2008, the Director of Human Resources, Alice M. Carrero, sent a letter to plaintiff's
immediate supervisor, Martín Vargas Morales ("Mr. Vargas"), requesting information regarding
plaintiff's duties and services and inquiring whether his services were necessary beyond July
2009 when his period of leave would expire.  ¶ 27.  On March 13, 2009, Mr. Vargas sent a letter
to Molina regarding plaintiff's duties and services and requesting an extension of plaintiff's
leave without pay.  ¶ 28.

Molina ordered the Human Resources director for the D.O.C. to look through employee
personnel files in an attempt to fire employees affiliated with the PPD.  ¶ 42.  The Human
Resources director identified plaintiff, who was on leave without pay as a mayoral candidate
under the PPD ticket.  ¶ 43.  Plaintiff did not receive any further notice or communication
regarding his leave without pay until October 4, 2010, when he received a letter from Molina

stating that they had reviewed his file, which indicated that since July 1, 2008 he had been absent for more than three consecutive months and was being considered for termination of his employment.  ¶ 29.  Said letter asked plaintiff to send any evidence or documentation that might show why the D.O.C. should not terminate his employment.  Id.  On December 7, 2010, plaintiff sent a letter to Molina including documentation showing that his leave without pay had been approved between August 31, 2007 and July 20, 2009, and that he had requested an additional extension of his leave without pay.  ¶ 30.  Plaintiff did not receive a response to his letter.  Id.  Molina disregarded plaintiff's letter in an attempt to have him fired.  ¶ 45.

In a letter dated December 29, 2011, González, the Secretary of the D.O.C. at the time, informed plaintiff of the termination of his employment from the D.O.C. due to his absence since July 31, 2008.  ¶ 31.  Plaintiff was not notified of his right to appeal the decision to terminate his employment or of his right to an informal hearing, and he was not told the venues or forums where he could appeal his termination.  Id. ¶¶ 66; 68.  Upon his dismissal, plaintiff was replaced with NPP affiliates and / or members.  ¶ 32.

## III.   STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint.  Litton Indus., Inc. v. Colón, 587 F.2d 70, 72 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ."  Id.  An evaluation of a motion to dismiss under Rule 12(b)(6) requires the court to "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in plaintiff's favor.' "  Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).  Dismissal under Rule 12(b)(6) is

appropriate only if the facts alleged, taken as true, do not warrant recovery.  Aulson, 83 F.3d at 3. In order to survive a motion to dismiss, plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."  Aulson, 83 F.3d at 3.

The Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).   "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' "  Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting Twombly, 550 U.S. at 555-56) (citation omitted).  Although Twombly was decided in the antitrust context, the Supreme Court held that the standard expounded in that decision applies to "all civil actions."  Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

## IV.   LEGAL ANALYSIS

### A.  Eleventh Amendment Immunity

Defendants argue that plaintiff cannot obtain monetary relief against defendants in their official capacities under the Eleventh Amendment.  ECF No. 13, at 8-9.  "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984);  see also Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority, 991 F.2d 935, 938 (1st Cir.1993); and Ramírez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir.1983).  Eleventh Amendment immunity extends to state agencies, such as the D.O.C., and to state employees exercising their official duties.  Will v. Mich. Dep't of State Police; 491 U.S. 58, 71 (1989); González De-Blasini v. Family Dep't, 278 F.Supp.2d 206, 210 (D.P.R.2003). It bars monetary damages in lawsuits against state employees where the recovery will come from the state treasury.  Culebra Enterprises Corp. v. Rivera Rios, 813 F.2d 506, 517 (1st Cir. 1987) (citing Kentucky v. Graham, 473 U.S. 159 (1985)).  For purposes of Eleventh Amendment immunity analysis, the Commonwealth of Puerto Rico is treated as a state.  See Redondo Constr. Corp. v. P.R. Highway & Transp. Auth., 357 F.3d 124, 125 n. 1 (1st Cir.2004); Ramírez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir.1983) ("Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects").  Plaintiff's prayer for relief includes back pay, double back pay, bonuses, benefits, emotional damages, punitive damages, attorney's fees, costs and interest.  ECF No. 1, at 15-16.  To the extent that the complaint seeks monetary damages from defendants in their official capacities as D.O.C. employees, those claims should be dismissed based on Eleventh Amendment immunity.

Eleventh Amendment immunity does not apply to claims made against state employees in their official capacity where prospective injunctive relief is sought.  Puerto Rico Aqueduct and

6

Sewer Authority v. Metcalf & Eddy, Inc., 606 U.S. 139, 146 (1993) (citing Green v. Mansour, 474 U.S. 64, 68 (1985)).  Plaintiff also seeks injunctive relief for reinstatement and to enjoin "defendants from further discrimination against him because of his political beliefs and association now and in the future."  ECF No. 1, at ¶ 72.  As plaintiff indicates in the complaint, however, Molina resigned from his position as Secretary of the D.O.C. on August 11, 2011, and no longer serves as Secretary of the D.O.C.  ECF No. 1 ¶ 52.  Defendants also assert that at the time the complaint was filed González was Secretary of the D.O.C., but that he no longer holds that position and has no capacity to reinstate any employee to said agency.  ECF No. 13, at 10. In his opposition to the motion to dismiss, plaintiff does not contest that González no longer holds the position of Secretary of the D.O.C.  See ECF No. 16.

Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party." FED. R. CIV. PRO. 25(d); see also González Torres v. Toledo, 586 F.2d 858, 860 (1st Cir. 1978) (citation omitted) ("Although Superintendent Calero was sued in both his individual and his official capacities and no motion to substitute his successor was made after he retired, a successor is automatically substituted under Fed. R. Civ. P. 25(d) . . . . Insofar as the injunction imposes continuing obligations to retain Capt. González and not to decrease his salary, these responsibilities obviously run against Calero in his official capacity and now run to his successor."); and  13 Charles Alan Wright et al., Federal Practice and Procedure § 3524.3 (3d ed.) ("A plaintiff will not lose standing to obtain prospective relief from a federal court when suing an official in his official capacity merely because the official dies, resigns, or otherwise

ceases to hold office during the pendency of the action. Civil Rule 25(d) provides for the automatic substitution of the officer's successor as a party.").   Thus, assuming that neither Molina nor González holds the position of Secretary of the D.O.C., plaintiff's claim for injunctive relief against Molina and González in their official capacities at Secretary of the D.O.C. runs to the current Secretary of the D.O.C.   The court may choose to order the substitution at any time, but the substitution occurs automatically and "the absence of such an order does not affect the substitution."  FED. R. CIV. PRO. 25(d).

Overall, the court should dismiss all claims for monetary damages against defendants in their official capacities.   Plaintiff's claims against Molina and González in their personal capacities survive defendants' motion to dismiss on sovereign immunity grounds.   Plaintiff's claims for prospective injunctive relief also survive defendants' motion to dismiss on sovereign immunity grounds.   Lastly, plaintiff's claims for prospective injunctive relief run to the individual currently holding the position of Secretary of the D.O.C., in his or her official capacity.

### B.  Plaintiff's Section 1983 Action

Section 1983 provides a cause of action against state actors acting under the color of law who deprive a citizen of rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.  A claim under § 1983 requires three elements for liability: (1) state action; (2) deprivation of a right; and (3) a causal connection between the defendant's alleged conduct and the deprivation.   Gutiérrez–Rodríguez v. Cartagena, 882 F.2d 553, 558 (1st Cir.1989).   A plaintiff must demonstrate that each defendant was personally and directly involved in the deprivation of his federally protected rights and that the defendant's conduct was the cause in

fact of the alleged deprivation.  See Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Rodríguez-Cirilo v. García, 513 F.3d 301, 306 (1st Cir. 2007)); Gutiérrez–Rodríguez, 882 F.2d at 559; Medina Pérez v. Fajardo, 257 F.Supp.2d 467, 473 (D.P.R.2003) (citing Caraballo Cordero v. Banco Financiero De Puerto Rico, 91 F.Supp.2d 484, 489 (D.P.R.2000)).

### 1.  First Amendment Political Discrimination

The First Amendment to the United States Constitution embodies the right to be free from political discrimination.  Barry v. Moran, 661 F.3d 696, 699 (1st Cir.2011).  The First Circuit Court of Appeals has held that that right prohibits government officials from "taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (internal citations omitted).  A *prima facie* case of political discrimination based on the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy–Ortíz v. Ortíz–Vélez, 630 F.3d 228, 239 (1st Cir.2010).

### i.      Opposing Political Affiliations

Plaintiff has pled that he was and is an activist member of the PDP and that both Molina and González are "very active" members of the NPP.  ECF No. 1 ¶¶ 6; 9; 37.  These allegations are sufficient to plausibly establish that plaintiff and defendants have opposing political affiliations.  See Cotto v. Municipality of Aibonito, Civ. No. 10-2241 (JAG), 2012 WL 1110177, at *7 (D.P.R. April 2, 2012) (citing Ocasio-Hernández, 640 F.3d at 13 (finding the plaintiff had

adequately pled that she had an opposing political affiliations from defendants by pleading she was a member of the PDP whereas all the defendants were members of the NPP).

## ii.    Knowledge of Political Affiliation

At the motion to dismiss phase, plaintiff "need only plead facts 'to support a reasonable inference that the . . . defendants had knowledge of their political beliefs.'"  See Cotto, Civ. No. 10-2241 (JAG), 2012 WL 1110177, at *7 (D.P.R. April 2, 2012) (citing Ocasio-Hernández, 640 F.3d at 15).  In conducting this assessment, the court "must take into account the 'cumulative effect of the factual allegations.'"  Id.  Defendants contend that it would be a "quantum leap" to conclude that they had personal knowledge that plaintiff was a member of the PDP.  ECF No. 13, at 14.

As to the second element, plaintiff states that defendants knew of his political affiliation. ECF No. 1, ¶ 23.  He includes additional details regarding why his political affiliation was well known, as he ran for mayor of Yauco in 2008 and as a candidate in the 2012 PDP primaries, and he participated in political activities such as caravans, marches, and meetings.  Id. ¶ 38. Furthermore, a fax dated May 22, 2008 was included in his employee file, which stated plaintiff was a PPD candidate for mayor of the city of Yauco.  Id.  Although "knowledge of political affiliation cannot be merely established through testimony of having been seen, or, for that matter, met during routine campaign activity participation . . . ," in this case plaintiff ran for political office himself.  Román v. Delgado Alteri, 390 F.Supp.2d 94, 103 (D.P.R. 2005).  Unlike supporting the political campaign of another individual, running for public office involves public exposure of a person's political affiliations through media publicity, campaign posters, and other campaign paraphernalia.  Taking the totality of plaintiff's factual allegations as true, a reasonable

inference can be drawn that Molina and González were aware of plaintiff's affiliation with the PDP.

**iii.    Adverse Employment Action**

Generally, discharging or demoting an employee, denying promotions and transfers, and failing to recall a public employee after layoffs constitute adverse employment actions. Rodríguez–García v. Miranda–Marín, 610 F.3d 756, 766 (1st Cir.2010) (internal citations omitted).  A "substantial alteration in an employee's job responsibilities" may also constitute an adverse employment action.  Bergeron, 560 F.3d at 8 (internal citation omitted). A denial of "special benefits and assignments" that normally come with a job may also suffice.  Id.  Even "informal harassment, as opposed to formal employment actions ... can be the basis for the [F]irst [A]mendment claims if the motive was political discrimination.'" Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir.2008) (internal citations omitted) (emphasis added).

Plaintiff does indeed allege that he suffered an adverse employment action, as he claims to have been fired from his position at the D.O.C.  Id. ¶ 40.  With respect to González, who allegedly fired plaintiff, the allegations in the complaint suffice to meet the third element of a claim for political discrimination. A clear causal connection exists between González's involvement and the deprivation of plaintiff's employment.  With regard to Molina, however, the complaint is devoid of any allegation that Molina fired plaintiff or had direct involvement in the decision to fire plaintiff.  Plaintiff does aver that Molina attempted to "harass" plaintiff by sending plaintiff a letter in an attempt to have plaintiff fired.  Id. ¶ 45.  The letter did not terminate his employment, but informed him that his file had been under review and that he was under consideration for termination, because he had been absent for more than 3 consecutive

months.  Id. ¶ 29.  The act of sending this single letter is not "sufficiently severe" enough to constitute an adverse employment decision that would provide the basis for a political discrimination claim.  See Welch, 542 F.3d at 937 (noting that actions of informal harassment only provides the basis for political discrimination claims "if the discriminatory acts are 'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'").

Because the complaint fails to allege that Molina was responsible for an adverse employment action distinct from the termination of plaintiff's employment, in order for plaintiff's political discrimination claim against Molina to survive, the allegations must sufficiently implicate Molina in the decision to terminate plaintiff.  Plaintiff alleges that Molina ordered the acting Human Resources Director to root through employees' personnel files in an effort to terminate any employee with PPD affiliations.  Id. ¶ 42.  The Human Resources director allegedly identified plaintiff, who was on leave without pay because he was a mayoral candidate under the PPD ticket.  Id. ¶ 43.  The complaint also contains the allegation that Molina sent plaintiff a letter in an "attempt" to fire plaintiff, stating that plaintiff had "quit assisting his work area without justification for more than three consecutive months," and that Molina disregarded plaintiff's response in an attempt to have plaintiff fired.  Id. ¶ 45.  Plaintiff also avers that he was "arbitrarily investigated" by Molina, Rivera, and González, and that as a result he was "separated" from his employment without being informed of his right to an informal hearing.  Id. ¶ 66.

Based on the facts in the complaint, plaintiff's termination occurred after González replaced Molina as Secretary of the D.O.C.  Plaintiff does not specifically articulate a causal

connection between Molina's actions as former Secretary of the D.O.C. and the ultimate decision to terminate him, which was carried out while González held the Secretary position.   Any inference from well-pleaded facts in the complaint that Molina's actions caused the deprivation of plaintiff's employment with the D.O.C. is speculative.  Overall, the allegations are insufficient to support a finding that Molina's conduct caused the adverse employment decision plaintiff suffered, as required to plead a proper cause of action under § 1983.  See Gagliardi, 513 F.3d 301 (finding plaintiff failed to state a § 1983 claim under the First Amendment where complaint intimated that defendants caused the adverse employment decision, but did not allege sufficient well-pleaded facts to demonstrate that defendants' behavior caused that decision); see also Cepero-Rivera, 414 F.3d at 129 (noting that under § 1983 "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable").  Because the complaint fails to plead direct and personal involvement in the deprivation of his right by Molina, plaintiff's political discrimination claim should be dismissed with prejudice with respect to him.

### iv.    Substantial or Motivating Factor

Defendants argue that plaintiff's complaint is devoid of any factual assertions that would satisfy the fourth prong of the standard for political discrimination—that political affiliation was a substantial or motivating factor in the adverse employment decision.  ECF No. 13, at 14.  At the motion to dismiss phase, "the plaintiff must allege facts that, if proven, would demonstrate that the employer's decision was brought about by political discrimination."  Rosario Rivera v. Aqueduct and Sewer Authority of Puerto Rico, 472 F.Supp.2d 165, 169 (D.P.R. 2007) (finding allegations that plaintiff engaged in constitutionally protected conduct, that she was demoted due

to her affiliation with the NPP, that her demotion did not follow the standard procedure for demotions, that her former position was filled with an employee affiliated with the PDP, and that plaintiff was bypassed for a promotion in favor of a PDP member sufficiently pled a case for political discrimination under § 1983).  "Whether the adverse employment actions takes place within close temporal proximity of a change of political administration 'unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated.'"  See Cotto, Civ. No. 10-2241 (JAG), 2012 WL 1110177, at *7 (D.P.R. April 2, 2012) (citing Ocasio-Hernández, 640 F.3d at 18).  Furthermore, "a political charged atmosphere 'occasioned by [a] major political shift . . . coupled with the fact that plaintiffs and defendants are of competing political persuasions [ ] may be probative of discriminatory animus."  Ocasio-Hernández, 640 F.3d at 17-18 (citing Acevedo-Díaz, 1 F.3d 62, 69 (1st Cir. 1993)).

In the case of caption, plaintiff directly alleges that he was fired because he belonged to a different political party than defendants.  ECF No. 1 ¶ 40.  He states that González is a "fanatical" member of the NPP, who fired plaintiff in order to discriminate against him for exercising his rights of free expression, free association, and political advocacy, related to plaintiff's campaign for mayor under the PPD ticket and support for the incumbent candidate for governor.  Id. ¶¶ 49; 52.  After Governor Fortuño took office, the composition of the administration changed, leading to appointments of NPP members in trust positions and promotions given to NPP members.  Id. ¶ 20.  Upon plaintiff's dismissal, he was replaced with NPP affiliates and members who are currently performing plaintiff's former duties.  Id. ¶ 32.  Although his dismissal did not immediately follow a change in administration, the complaint

sketches a factual predicate that his termination was related to a major political shift surrounding a change in administration.  Plaintiff's allegations, if proven, would demonstrate that political discrimination was a substantial and motivating factor in the decision to termination his employment, and satisfy the fourth prong of the pleading standard.  See Ocasio-Hernández, 640 F.3d at 18 (citing Mercado-Berrios v. Cancel-Alegría, 611 F.3d 18, 24 (1st Cir. 2010) ("In contrast to their treatment, the plaintiffs alleged that NPP-affiliated employees were promoted to high-level trust positions following the change in administration.  Similarly, the plaintiffs alleged that their positions at La Fortaleza were filled almost immediately by NPP-affiliated workers.  We have previously described such comparative evidence as 'helpful' in demonstrating that a particular plaintiff was targeted for his or her political views.").  Overall, plaintiff has adequately pled a § 1983 claim for political discrimination against González.  Plaintiff's political discrimination claims should survive against González in his personal capacity and against the current Secretary of the D.O.C. in his or her official capacity, for prospective injunctive relief.

### 2. Fifth Amendment Due Process

The Due Process Clause of the Fifth Amendment "applies only to actions of the federal government—not to those of state or local governments."  Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007) (internal citations omitted).  Defendants argue that plaintiff's Fifth Amendment claims should be dismissed because there are no federal actors present in the case and plaintiff had not alleged any federal actions or omissions.  ECF No. 13, at 17.  In his response in opposition, plaintiff concedes that the Fifth Amendment claims were filed in error and asserts that he will not oppose defendants' Fifth Amendment argument.  ECF No. 16, at 18. A review of the complaint reveals that there are no allegations regarding federal actors.  See ECF

No. 1.  Accordingly, the Fifth Amendment claims against defendants should be dismissed, with prejudice.

### 3. Fourteenth Amendment Due Process

The Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law."  U.S. CONST., amend. XIV, § 1.  This guarantee has both substantive and procedural components.  "Procedural due process requires that the procedures provided by the state in effecting the deprivation of liberty or property are adequate in light of the affected interest.  Substantive due process, however, imposes limits on what a state may do regardless of what procedural protection is provided."  Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir.1991) (citing Monroe v. Pape, 365 U.S. 167, 171-72 (1961); Rochin v. California, 342 U.S. 165, 169 (1952)).  The substantive due process guarantee does not, however, serve as a means of constitutionalizing tort law so as to "impos[e] liability whenever someone cloaked with state authority causes harm."  County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998).

### i.        Procedural Due Process

In order to establish a procedural due process claim under §1983, a plaintiff "must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process."  Marrero–Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir, 2007) (citing PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir.1991)).   In the context of claims for termination of employment, it is well-established that the Due Process Clause of the Fourteenth Amendment guarantees public employees who have a property interest in continued employment the right to at least an informal hearing before termination.  Cleveland Board of Education v. Loudermill,

16

470 U.S. 532, 538 (1985); Board of Regents v. Roth, 408 U.S. 564, 576-78 (1972); Kercado-Meléndez v. Aponte-Roque, 829 F.2d 255, 262 (1st Cir.1987).  Such property rights are not created by the Constitution, but by "existing rules or understandings that stem from an independent source such as state law." Loudermill, 470 U.S. at 538. Under Puerto Rico law, "career" employees have property rights in their continued employment.  Kauffman v. P.R.T.C., 841 F.2d 1169, 1173 (1st Cir.1988) (citing González-De-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004)).

Plaintiff alleges that he was a career employee and thus has met the pleading standard with regard to the first prong of a procedural due process claim.  Marrero–Gutierrez, 491 F.3d at 8.  As a career employee, he has a property interest in his continued employment.  Plaintiff avers that González fired him and failed to notify him of his right to an informal hearing.  ECF No. 1, ¶ 51.  The termination letter González sent to plaintiff "failed to include any information on [p]laintiff's rights to appeal the decision." Id. ¶ 31.  Plaintiff avers that "he was not notified of his right to appeal the decision to terminate his employment, [or] of his right to an informal hearing," and he "was not told the venues or forums where he could present an appeals process." Id. ¶¶ 66; 68.  As to the second prong of his procedural due process claim, these allegations are sufficient to meet the pleading standard with regard to González.  Due process requires that the pre-termination hearing "fulfill the purpose of 'an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Marrero–Gutierrez, 491 F.3d at 8 (citing Cepero-Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005) (citing Loudermill, 470 U.S. at 545-46)).  "Before a career employee is discharged, he is 'entitled to oral or written

notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" Cepero-Rivera v. Fangundo, 414 F.3d 124, 134 (1st Cir. 2005) (citing Loudermill, 470 U.S. at 545-46).  Based on plaintiff's factual allegations, a plausible inference can be drawn that González deprived him of his right to continued employment without notice and an opportunity to be heard prior to the termination, in violation of his right to procedural due process.  Therefore, plaintiff's § 1983 claims for deprivation of his Fourteenth Amendment right to procedural due process should survive against González, in his personal capacity, and the current Secretary of the D.O.C., in his or her official capacity for prospective injunctive relief.

The allegations in the complaint do not, however, establish that Molina deprived plaintiff of a property interest as defined by state law.  Molina requests that the court dismiss plaintiff's due process claims, arguing plaintiff does not allege in the complaint that Molina was personally involved in the challenged employment action.  ECF No. 13, at 20.  Plaintiff replies that each defendant acted under color of authority in order to harass him and, ultimately, to fire him.  ECF No. 16, at 21.  The complaint does contain the allegation that Molina sent plaintiff a letter informing him of the D.O.C.'s intentions to terminate his employment and requesting any pertinent documents.  ECF No. 1, ¶ 30.  The complaint also contains allegations that Molina *attempted* to fire or "constructively fire" plaintiff.  Id. ¶¶ 45; 46.  Plaintiff also avers that he was "arbitrarily investigated" by Molina and as a result was "separated" from his employment without being informed of his right to an informal hearing.  Id. ¶ 66.  Finally, plaintiff makes the conclusory allegation that "[t]he conduct and acts of all defendants named in th[e] complaint

resulted in the termination of [his] employment, harassment, ultra vires investigation, failure to notify of the right to appeal and to request an informal hearing . . . ." Id. ¶ 67.

Viewing these allegations in their totality and in the light most favorable to plaintiff, they do not establish a plausible claim that Molina's actions deprived him of his right to continued employment with the D.O.C.   The allegation that Molina "attempted" to discharge or constructively discharge plaintiff is insufficient to support a fourteenth amendment claim against him, as it is not enough that he tried to terminate plaintiff's employment; his actions must have actually resulted in the deprivation of his property interest in continued employment.   Based on the allegations contained within the complaint, a causal connection between Molina's allegedly role in investigating plaintiff and the termination of plaintiff's employment at the D.O.C. would be attenuated, at best.   Plaintiff does not allege sufficient facts to bridge the gap between the alleged investigation and his ultimate termination, and as a result any connection that can be inferred is too speculative to sustain a claim that Molina's conduct deprived plaintiff of his rights.   Overall, because the facts in the complaint do not establish that a causal connection existed between Molina's behavior and the deprivation of plaintiff's right to continued employment, plaintiff's procedural due process claim should be dismissed against him.

### ii.      Substantive Due Process

The complaint refers broadly to "due process" claims, and does not specify whether plaintiff brings a procedural due process claim, a substantive due process claim, or both.   The First Circuit Court of Appeals has held that substantive due process "is an inappropriate avenue of relief" when the conduct at issue is covered by the First Amendment.   Pagan v. Calderon, 448 F.3d 16, 33 (1st Cir. 2006). "It is the First Amendment, not the Fourteenth Amendment, that

guards individuals against state-sponsored acts of political discrimination or retaliation."  Id. at 34–35.  Thus, when "allegations of political discrimination and retaliation are covered by the First Amendment, those allegations cannot serve as a basis for a substantive due process claim." Id. at 34.  In this case, the alleged conduct underlying plaintiff's substantive due process claims is the same as that which underlies his political discrimination claim, therefore his substantive due process claims should be dismissed with prejudice against defendants.  See Quiles-Santiago v. Rodriguez-Diaz, 851 F. Supp. 2d 411, 427 (D.P.R. 2012).

## C.  Supplemental State Law Claims

### a.  Law 100 Claim

Puerto Rico's Law 100 makes it unlawful for an employer to discriminate against an employee because of, *inter alia*, the employee's political affiliation.  P.R. Laws Ann. tit. 29, § 146.  Law 100 does not apply to municipalities or to municipal officials when they are sued in their official capacities.  Rodríguez Sostre v. Municipio de Canóvanas, 203 F.Supp.2d 118, 119 (D.Puerto Rico 2002); see, e.g., Marín–Piazza v. Aponte–Roque, 873 F.2d 432, 436 (1st Cir.1989); Gómez–Vázquez v. Díaz–Colón, 91 F.Supp.2d 481, 483 (D.Puerto Rico 2000); Orta v. Padilla Ayala, 131 D.P.R. 227, 239 (1992).  Law 100 only applies to an "employer," which is definedas "any natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person.  It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or agencies."  P.R. laws Ann. tit. 29 § 151.   Its definition of employer specifically excludes government agencies from coverage expect if they "operat[e] as private business or

20

enterprises." P.R. Laws Ann. tit. 29 § 151(2). Because the D.O.C. is considered an arm of the state, any claims against it or the defendants in their official capacities must be dismissed. See, e.g. Padilla Cintron v. Rossello González, 247 F.Supp.2d 48, 56–59 (D.P.R.2003).

Defendants argue that plaintiff's Law 100 claim should be dismissed because individual, or personal, liability only applies to the supervisor that actually committed the acts of discrimination. ECF No. 13, at 21. The Supreme Court of Puerto Rico, however, has held that any individual responsible for employment discrimination on the basis of political affiliation is liable under Law 100. Santiago-Díaz v. Rivera-Rivera, CIV. 10-1749 JAF, 2011 WL 2898964 (D.P.R. July 15, 2011) (citing Rodríguez-Narváez v. Pereira, 552 F.Supp.2d 211, 217 (D.P.R. 2007) (citing Rosario Toledo v. Distribuidora Kikuet, Inc., 153 P.R. Dec. 125 (2000))); see also Cotto, Civ. No. 10-2241 (JAG), 2012 WL 1110177, at *19 (D.P.R. April 2, 2012) (citations omitted) (noting that "Law 100 permits claims against a public agency's employees in their personal capacities" and finding Law 100 claim against municipal employees for political discrimination survived motion to dismiss). Personal liability under Law 100 applies "to any supervisor responsible for an act of discrimination." Rodríguez-Narváez, 552 F.Supp at 218.

To state a claim under Puerto Rico's Law 100, an employee must allege: (1) that he was actually or constructively discharged, and (2) that the decision was discriminatory. Velásquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (quoting Baralt v. Nationwide Mutual Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001)). "To prove constructive discharge a plaintiff must show that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign." Marrero v. Schindler Elevator Corp., 494

F.Supp.2d 102, 111 (D.P.R. 2007) (citing De La Vega v. San Juan Star, 377 F.3d 111, 117 (1st

Cir. 2004); Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003)).

　　　González allegedly fired plaintiff due to plaintiff's political affiliation.  ECF No. 1, ¶ 52.

With respect to González in his personal capacity, plaintiff's allegations are sufficient to survive

defendants' motion to dismiss.  As to Molina, however, plaintiff's allegations do not satisfy the

first prong of the pleading standard.  As previously discussed Molina was no longer employed at

the D.O.C. at the time plaintiff was discharged.  Personal liability under Law 100 only applies to

supervisors responsible for acts of discrimination, and the complaint does not establish a

sufficient link between Molina's conduct and plaintiff's actual, allegedly discriminatory,

discharge.  As with the political discrimination and procedural due process claims under § 1983,

allegations of an "attempt" to termination plaintiff is not enough.  The mere act of sending

plaintiff a letter regarding his employment status falls short of meeting the standard for

constructive discharge under Law 100.  The remaining allegations in the complaint also fail to

establish a plausible claim that Molina's actions made plaintiff's working conditions so difficult

or unpleasant such that Molina constructively discharged plaintiff.  Thus, plaintiff's Law 100

claims for individual liability should survive against González and be dismissed against Molina.

### b.  Article 1802 Claim

　　　Article 1802 is Puerto Rico's general tort statute.  The statute provides that a person who

"causes damages to another through fault or negligence" shall be liable in damages.  P.R. Laws

Ann. tit. 31, § 5141.  Defendants assert that plaintiff can only recover under Article 1802 if

defendants engaged in tortious conduct distinct from that which underlies the alleged political

discrimination.  ECF No. 13, at 22; see also Cotto, Civ. No. 10-2241 (JAG), 2012 WL 1110177,

at *19 (D.P.R. April 2, 2012) ("Since the gravamen of Alvarado's state law claim is political discrimination pursuant to Law 100, Alvarado is precluded from also bringing suit under Article 1802 and 1803."); Medina v. Adecco, 561 F.Supp.2d 162, 176 (D.P.R. 2008) ("Medina based her Article 1802 claim on the same conduct that supports her employment law claims; she alleged not independently tortious conduct.  Accordingly, the court must dismiss Medina's Article 1802 claim.").  Plaintiff has also conceded that he filed the Article 1802 claim in error and will not oppose defendants' request for dismissal of said claim.  ECF No. 16, at 23.  A review of the complaint does not reveal allegations of any tortious conduct distinct from that which is related to plaintiff's discrimination claims.  Therefore, the Article 1802 claim against defendants should be dismissed, with prejudice.

## V.   CONCLUSION

For the foregoing reasons, it is hereby recommended that Molina and González's motion to dismiss under Rule 12(b)(6) be granted in part and denied in part, as follows: (1) defendants' request to dismiss plaintiff's § 1983 claims for monetary damages in their official capacities should be **GRANTED**; (2) defendants' request to dismiss plaintiff's § 1983 claims for injunctive relief against them in the official capacities should be **DEEMED MOOT** pursuant to Rule 25(d); (3) González's request for dismissal of the First Amendment political discrimination, Fourteenth Amendment procedural due process, and Law 100 claims against him in his personal capacity should be **DENIED**; (4) Molina's request for dismissal of the First Amendment political discrimination, Fourteenth Amendment procedural due process, and Law 100 claims against him in his personal capacity should be **GRANTED**; and (5) defendants' request to dismiss plaintiff's

Fifth Amendment, Fourteenth Amendment substantive due process, and Article 1802 claims should be **GRANTED**.

The parties have fourteen (14) days to file any objections to this report and recommendation.  Failure to file same within the specified time waives the right to appeal this report and recommendation.  FED. R. CIV. P. 72(b)(2); FED. R. CIV. P. 6(c)(1)(B); D.P.R. CIV. R. 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150–51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED

In San Juan, Puerto Rico, this 25th day of February, 2014.

s/Marcos E. López
U.S. Magistrate Judge